IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AXIS CAPITAL, INC., | ) | 8:12CV227 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| GRONINGER INSURANCE | ) | |
| AGENCY, LLC; | ) | |
| JAMES E. GRONINGER, II; and | ) | |
| JONATHAN H. GRONINGER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This diversity action involves a lease agreement that was entered into in April 2009 between Noreast Capital Corporation ("Noreast"), as lessor, and Groninger Insurance Agency, LLC ("GIA"), as lessee. GIA's obligations under the lease were personally guaranteed by James Groninger and Jonathan Groninger.[1] In March 2011, Noreast assigned the lease to Axis Capital, Inc. ("Axis").[2]

Axis has alleged that the purpose of the agreement was to "provide[ ] financing for a transaction between GIA and a vendor, Astonish Results, LP ('Astonish'), for a 'Customized Software, Website & Digital Marketing Program' ('Program')" (filing 1, ¶ 1). According to the complaint, "Noreast paid the purchase price for the Program to Astonish, and then leased the Program to GIA in exchange for a series of monthly payments" (filing 1, ¶ 1). Axis claims GIA breached the lease by failing to make any payments since October 2011.

---

[1] GIA is a Pennsylvania corporation, and the Groningers reside in Pennsylvania (filing 1, ¶¶ 3-5; filing 14, ¶¶ 3-5). GIA and the Groningers are Defendants.

[2] Axis (Plaintiff) is alleged to be a Nebraska corporation (filing 1, ¶ 2).

Three motions are pending: (1) On May 30, 2013, Axis filed a motion for summary judgment (filing 38). (2) On June 3, 2013, Axis filed a motion for a protective order staying all discovery (filing 41). (3) On June 4, 2013, Defendants filed a motion for an extension of time or continuance (filing 44).

On June 10, 2013, I entered an order (filing 47) temporarily continuing the deadline for Defendants to respond to the summary judgment motion, as well as the deadline for Axis responding to Defendants' outstanding discovery requests.[3]  Now that the competing motions filed on June 3 and 4 have been fully briefed, and evidence submitted by both sides, I find and conclude that Defendants have made a sufficient showing under Federal Rule of Civil Procedure 56(d) for a continuance,[4] while Axis has not made a sufficient showing under Federal Rule of Civil Procedure 26(c)(1)(A) for a stay of discovery.[5]  I will briefly explain the reasons for my ruling.

Axis argues that the lease agreement qualifies as a "finance lease" under Article 2A of the Uniform Commercial Code,[6] and, consequently, Defendants are precluded

---

[3] Axis's motion for a protective order indicated it had been served with requests for production of documents on April 30, 2013. Despite the entry of the standstill order on June 10, Axis served its responses on June 20, 2013 (filing 50).

[4] "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may . . . (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

[5] "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery[.]" Fed. R.Civ. P. 26(c)(1)(A).

[6] The agreement expressly states that the lease "qualifies as a statutory finance lease under Article 2A of the UCC" and that GIA agrees it is "absolutely and unconditionally obligated to pay all lease payments and other amounts due for the entire lease term no matter what happens, even if the equipment is damaged or

as a matter of law from raising any affirmative defenses.  The argument, which also forms the basis for Axis's motion for summary judgment, goes something like this: Because this is a finance lease, "[GIA's] promises under the lease contract bec[a]me irrevocable and independent upon [GIA's] acceptance of the goods." Neb. Rev. Stat. U.C.C. § 2A-407(1).[7] "A promise that has become irrevocable and independent under subsection (1): (a) is effective and enforceable between the parties, and by or against third parties including assignees of the parties; and (b) is not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom the promise runs." Neb. Rev. Stat. U.C.C. § 2A-407(2). Also, "because the lease is a finance lease, no warranty of fitness or merchantability [was] extended by [Noreast] to [GIA]. Sections 2A-212(1) and 2A-213. Absent an express provision in the lease agreement, . . . or application of the principles of law and equity, including the law with respect to fraud, duress, or the like (sections 1-103 and 2A-103(4)),[8] [GIA] has no claim against [Noreast]" and "[GIA's] obligation to pay rent to [Noreast and its assignee, Axis] continues as the obligation became irrevocable and independent when [GIA] accepted the [Program] (section 2A-407(1)).[9] [GIA] has

---

[7] The lease agreement provides that it "will be governed by the laws of the State of Maryland (or the state of Lessor's Assignee, if different) . . ." (filing 1 at 6). In this case, "Lessor's Assignee" is Axis and Axis is alleged to be a Nebraska corporation.

[8] "Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause supplement its provisions." Neb. Rev. Stat. U.C.C. § 1-103(b). "[A]rticle 1 contains general definitions and principles of construction and interpretation applicable throughout this article 2A]." Neb. Rev. Stat. U.C.C. § 2A-103(4).

[9] The agreement contains the following "delivery and acceptance" provision which was signed by James Groninger on behalf of GIA:

destroyed, if it is defective or if you no longer can use it" (filing 1 at 7 (uppercase typeface omitted)).

-3-

no right of setoff with respect to any part of the rent still due under the lease. Section 2A-508(6). However, [GIA] may have another remedy. Despite [any] lack of privity between [GIA] and [Astonish], [GIA] may have a claim against [Astonish]. Section 2A-209(1)." Neb. Rev. Stat. U.C.C. § 2A-407, comment 5.

It will be noted that even if the agreement is a finance lease,[10] GIA is not barred from claiming that the agreement was the result of "fraud, duress, and the like." *Id.* At least some of the affirmative defenses alleged by Defendants concern the formation of the contract and are of this nature.[11]

---

By Your signature below, You certify that (a) You have received and accepted all the Equipment listed on this Lease and the Equipment Schedule "A", if any; (b) The Equipment conforms with all of Your requirements; (c) You acknowledge that We are not the manufacturer, distributor or Vendor of the Equipment; (d) There are no side agreements with Us or anyone else; (e) You were not induced to sign this by any assurance from Us or anyone else; (f) You have reviewed and accepted all of the terms and conditions of this Lease; (g) Your promises herein will be irrevocable and unconditional in all respects; (h) You understand and agree that we have purchased the equipment from the Vendor, and you may contact the above Vendor for your warranty rights, if any, which we transfer to you for the terms of this Lease; (i) Your approval as indicated below of our purchase of the equipment from the Vendor is a condition precedent to the effectiveness of this Lease.

(Filing 1 at 6). The "Equipment" is described as "customized software, website & digital marketing program" (filing 1 at 6 (uppercase type omitted)).

[10] This is a disputed issue because Defendants deny leasing any "goods." *See* Neb. Rev. Stat. U.C.C. § 2A-103(1)(h) (defining "goods" to mean "all things that are movable at the time of identification to the lease contract").

[11] Eleven paragraphs of Defendants' answer are identified by them as alleging affirmative defenses:

24. Defendants plead that Plaintiff is not entitled to recover due to a lack of, insufficiency of, or failure of consideration.

However, because the lease was assigned to Axis, another provision of the agreement must be considered.  Paragraph 18 of the lease agreement states that all of Noreast's rights under the lease can be assigned without notice to GIA, and further provides: "You understand that Our assignee ("Assignee") will have the same rights and benefits but they do not have to perform any of Our obligations and You agree to timely pay Assignee all amounts owed under this Lease notwithstanding any defense or claim You have or assert against Us" (filing 1 at 7, ¶ 18).[12]

---

25. Defendants plead that Plaintiff is not entitled to recover due to Plaintiff's fraud.
26. Defendants plead that Plaintiff is not entitled to recover due to the doctrine of illegality.
27. Defendants plead that Plaintiff is not entitled to recover due to payment.
28. Defendants plead that Plaintiff is not entitled to recover due to Plaintiff's failure to mitigate damages.
29. Defendants plead that Plaintiff is not entitled to recover due to mutual mistake.
30. Defendants plead that Plaintiff is not entitled to recover due to rescission.
31. Defendants plead that Plaintiff is not entitled to recover due to the doctrine of unconcsionability [*sic*].
32. Defendants plead that Plaintiff is not entitled to recover because the Lease is a contract of adhesion and its enforcement would offend public policy.
33. Defendants plead that Plaintiff is not entitled to recover because the Lease is so indefinite, vague, or ambiguous that it is unenforceable in whole or part.
34. Defendants plead that Plaintiff is not entitled to recover because there was no meeting of the minds, thus no enforceable contract existed.

(Filing 14 at 2-3).

[12] Consistent with this clause, a "master agreement" governing the assignment from Noreast to Axis provided: "All obligations, duties, responsibilities and liabilities, if any under the lease agreements which exist, accrue and/or are incurred, as the case

The enforceability of this "waiver of defenses" clause must be determined with reference Neb. Rev. Stat. U.C.C. § 9-403, which provides that "an agreement between an account debtor[13] and an assignor not to assert against an assignee any claim or defense that the account debtor may have against the assignor is enforceable by an assignee that takes an assignment: (1) for value;[14] (2) in good faith;[15] . . . and (4) without notice of a defense or claim in recoupment of the type that may be asserted against a person entitled to enforce a negotiable instrument under section 3-305(a)."[16]

---

may be, prior to the effective date of each schedule, or arise by our acts or omissions prior or subsequent to such date, shall remain with us and continue to be our obligations, and nothing herein shall be construed to constitute a transfer to, or an assumption by, you of such obligations" (filing 22-4 at 1, ¶ 2.2 (uppercase typeface omitted)).

[13] "Account debtor" means "a person obligated on an account, chattel paper, or general intangible." Neb. Rev. Stat. U.C.C. § 9-102(a)(3).

[14] "In this section, 'value' has the meaning provided in section 3-303(a) [relating to negotiable instruments]." Neb. Rev. Stat. U.C.C. § 9-403(a).

[15] "Good faith" means "honesty in fact in the conduct or transaction concerned." Neb. Rev. Stat. U.C.C. § 1-201(b)(20).

[16] Neb. Rev. Stat. U.C.C. § 3-305 provides, in part:

(a) Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;

(2) a defense of the obligor stated in another section of this article or a defense of the obligor that would be available if the

-6-

"[T]his section is designed to put the assignee in a position that is no better and no worse than that of a holder in due course of a negotiable instrument under article 3." *Id.*, comment 3.

I realize that I previously dismissed Defendants' counterclaims for fraud, misrepresentation, and breach of contract, *see* Memorandum and Order entered on January 30, 2013 (filing 30), but that ruling was based on the insufficiency of Defendants' pleading, and, in particular, their conclusory allegations that "[i]n accepting the assignment of the Lease from Noreast, Axis stepped into Noreast's shoes and assumed all of Noreast's liability in connection with the Lease" (filing 14, ¶¶ 35, 38, 41). I did not hold that the terms and conditions of the lease prohibit Defendants from raising any defenses as a matter of law.

---

person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and

(3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.

(b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder.

Former UCC § 9-206(1) provided, more simply, that a "waiver of defenses" clause in a sales contract or lease "is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3)."

Defendants requested Axis to produce documents that were identified in Axis's initial disclosures, that reflected payments received by Axis, that related to Axis's acquisition of the lease, and that involved communications between Axis and Astonish (filing 43-1 at 5), all of which seem relevant to the issues presented by the motion for summary judgment.  Although Axis initially sought to prevent discovery of these documents by filing the motion for a protective order, it has since responded to the requests and apparently has produced the documents without objection.  Axis takes the position that no further discovery is needed at this time, but, for the reasons explained above, I do not accept its premise that "[t]he only factual matter raised in Axis's motion for summary judgment is whether [GIA] failed to make payments pursuant to the terms of . . . [its] financing lease[ ]" (filing 42 at 5).  I also find that Defendants have not had a sufficient opportunity to conduct discovery.

The purpose of Rule 56(d) "'is to provide an additional safeguard against an improvident or premature grant of summary judgment.'" *U.S. ex. rel. Bernard Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002) (quoting 10B Charles Alan Wright et al., Federal Practice and Procedure: Civil 3d § 2740 (1998)). Although Rule 56(d) "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious," *Wilmar Poultry Co. v. Morton–Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir.1975) (citing Fed.R.Civ.P. 56(f)), it "should be applied with a spirit of liberality." *U.S. ex. rel. Bernard*, 293 F.3d at 426 (citing 10B Charles Alan Wright et al., Federal Practice and Procedure: Civil 3d § 2740 (1998)).

Generally, the party seeking relief under Rule 56(d) must, by affidavit, describe "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008) (citing *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004)).However, "these requirements are not inflexible and . . . district courts are vested with considerable discretion in their administration." *Resolution Trust Corp. v. North Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994); *see also*

-8-

*Stanback v. Best Diversified Food Prods.*, 180 F.3d 903, 910 (8th Cir. 1999) (citing *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F .3d 602, 606 (8th Cir. 1999)) ("In analyzing whether a claim is ripe for summary judgment, a district court has discretion to determine whether the parties have had adequate time for discovery, and that determination is reviewed for abuse of discretion."). As a result, district courts may relax, or even excuse, one or more of those requirements. *North Bridge Assocs., Inc.*, 22 F.3d at 1203.

*Jacobs v. PT Holdings, Inc.*, No. 8:11CV106, 2012 WL 705772, at *2 (D.Neb. Mar. 2, 2012) (footnotes omitted).

Although this case was filed on June 29, 2012, the parties' Rule 26(f) report was not completed until February 15, 2013 (filing 32), and the court did not enter a progression order establishing a discovery schedule until February 28, 2013 (filing 34). That order, which remains in effect, set a deadline of December 13, 2013, for completion of written discovery and taking depositions. Defendants have presented evidence that, by informal agreement of counsel, discovery was deferred in the hope that a settlement could be reached once a lawsuit filed in a Rhode Island court by GIA against Astonish was resolved; that because the Rhode Island litigation is still ongoing, the parties began settlement discussions in April 2013; and that on April 13, 2013, Axis rejected Defendants' settlement offer and advised that it would be filing a motion for summary judgment rather than making a counteroffer (filing 46 at 1-2; filing 45-1; filing 45-2).

Under the totality of the circumstances, I conclude that Defendants' request for a 90-day extension of time to respond to Axis's motion for summary judgment is reasonable, and that a stay of discovery is not appropriate. If Axis wishes to expand upon its motion for summary judgment, however, I will permit it do so.

Accordingly,

IT IS ORDERED that:

1.      Plaintiff's motion for a protective order (filing 41) is denied.

2.      Defendants' Rule 56(d) motion (filing 44) is granted, as follows:

      a.      On or before October 25, 2013, Plaintiff may file a supplemental brief and supplemental index of evidence in support of its motion for summary judgment (filing 38);

      b.      On or before November 15, 2013, Defendants shall respond to Plaintiffs' motion for summary judgment (filing 38); and

      c.      Plaintiff may reply to Defendants' response within the time prescribed by rule.

3.      The court's final progression order (filing 34) shall remain in full force and effect.

August 12, 2013.                    BY THE COURT:

                                   *Richard G. Kopf*
                              Senior United States District Judge

---

\* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.